NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241280-U

NO. 4-24-1280

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 14, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* T.P., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
| Petitioner-Appellee, | ) | No. 22JA80 |
| v. | ) | |
| Mackenzie S., | ) | Honorable |
| Respondent-Appellant.) | ) | John C. Wooleyhan, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices Doherty and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court granted appointed counsel's motion to withdraw and affirmed the judgment of the trial court terminating respondent's parental rights, as there was no arguably meritorious issue.

¶ 2    Respondent, Mackenzie S., appeals the trial court's order terminating his parental rights with regard to his child, T.P. (born in December 2022). Counsel was appointed to represent respondent on appeal. Counsel has filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), alleging that there is no arguably meritorious issue to be raised on appeal. We grant counsel's motion to withdraw and affirm the trial court's judgment.

¶ 3                              I. BACKGROUND

¶ 4    On December 8, 2022, the State filed a petition for adjudication of wardship with regard to T.P. Both respondent and another individual were named as T.P.'s father in the

petition, but respondent was subsequently determined to be T.P.'s father through DNA testing. On December 9, 2022, the trial court entered a temporary custody order granting the Illinois Department of Children and Family Services (DCFS) temporary custody of T.P. The court ordered that T.P.'s parents were to have no visitation until further order of the court.

¶ 5 On March 23, 2023, the trial court entered an adjudicatory order finding T.P. had been neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(1)(b) (West 2022)) in that he was in an environment injurious to his welfare. On April 28, 2023, the court entered a dispositional order finding respondent was unwilling to care for T.P., granting the petition for adjudication of wardship, and granting custody of T.P. to DCFS. The court ordered that respondent was to have no visitation with T.P. until further order of the court. The court also found the permanency goal—that T.P. would return home within 12 months—to be appropriate.

¶ 6 On July 28, 2023, and December 12, 2023, the trial court entered permanency orders finding respondent had not made reasonable efforts or reasonable progress toward the return of the minor. On March 26, 2024, the court entered a permanency order changing the permanency goal to substitute care pending determination of termination of parental rights. The court found respondent had not made reasonable progress or efforts toward T.P.'s return.

¶ 7 On April 3, 2024, the State filed a motion for termination of respondent's parental rights, which alleged respondent was an unfit parent on the grounds that he had failed to maintain a reasonable interest of interest, concern, or responsibility as the child's welfare under section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2022)) and that he was depraved under section 1(D)(i) of the Adoption Act (*id.* § 1(D)(i)) in that he had three felony convictions, one of which had occurred within the last five years.

¶ 8 A hearing on the State's motion to terminate respondent's parental rights was held on September 26, 2024. Jessica Fuller, an employee of Chaddock Foster and Adoption Services (Chaddock), testified that she had been assigned to T.P.'s case since December 2022. She stated that on March 14, 2023, it was determined through DNA testing that respondent was T.P.'s father. Fuller testified that she prepared a DCFS service plan dated April 21, 2023, which covered the six-month period from October 21, 2022, to April 21, 2023. The goals set forth for respondent in the service plan were cooperation with the caseworker, substance abuse services, parenting classes, mental health services, housing, and employment. Fuller was not able to visit respondent's residence during that period due to his lack of cooperation with the caseworker. Respondent advised Fuller he did not want to engage in services until his paternity was established. However, his lack of cooperation did not change once his paternity was established.

¶ 9 Fuller testified she prepared a second service plan dated October 23, 2023. Respondent's goals remained the same in the second service plan. Respondent was rated unsatisfactory as to all of his goals. Other than signing a consent allowing Fuller to speak to his probation officer, respondent was not cooperative during the period covered by the second service plan.

¶ 10 Fuller testified that she prepared a third service plan dated April 18, 2024. Respondent's goals remained the same as those in the previous service plans, and he was rated unsatisfactory as to all of these goals. Fuller learned through respondent's probation officer that he had begun to engage in some services during this period but was unsuccessfully discharged. Respondent admitted to testing positive for methamphetamine in December 2023, January 2024, and February 2024. Respondent was also incarcerated due to a probation violation during the six-month period covered by the third service plan.

¶ 11 Fuller testified that respondent had never been allowed visitation with T.P., and respondent had never asked to become engaged in services so that he could have visitation. Respondent never gave Fuller any cards, gifts, or letters for T.P.

¶ 12 Fuller testified that she attempted to contact respondent in December 2022 to complete an integrated assessment. She went to the address respondent had given the trial court, but she learned it was his mother's residence, and he did not live there. She obtained a phone number from respondent's mother and attempted to have respondent do the integrated assessment over the phone, but "that did not come to fruition." With the exception of one home visit in May 2024, Fuller only spoke with respondent at court appearances during the pendency of the case. Fuller stated that the service plans were mailed to respondent, but she did not know if he received them. She stated she did not remember whether she gave respondent copies of the service plans in court, but that was her usual practice. Fuller testified that she believed respondent attended every court hearing, and she spoke to him every time he was in court.

¶ 13 Copies of the three service plans were admitted into evidence over respondent's objection. The State also requested that the trial court take judicial notice of three Adams County cases in which defendant had felony convictions, the most recent of which was in July 2023.

¶ 14 The trial court found the State had proven that respondent was unfit on the basis that he failed to maintain a reasonable degree of interest, concern, or responsibility for T.P.'s welfare. The court noted that respondent had never had any visits with T.P. The court also noted respondent failed to meet with the caseworker or complete an integrated assessment. The court stated respondent started a couple of the required services under the service plan but was unsuccessfully discharged and never completed any services. The court did not address whether respondent was also unfit on the ground of depravity.

¶ 15 After finding respondent unfit, the trial court immediately held a best-interest hearing. Brittney Miller testified she was employed with Chaddock and had taken over managing T.P.'s case in May 2024. She stated T.P. was currently one and a half years old. She observed him in his foster home at least once per month. He had been in his placement for 16 months and appeared to be bonded to his foster parents. She stated he went to his foster parents when he was hurt or needed a drink, and he appeared to be emotionally bonded to his foster mother. She stated there were no concerns about T.P.'s foster placement. T.P.'s foster parents ensured he received the medical care he needed, and they were willing to adopt him. Since Miller had been the case manager, it had never been recommended that either of T.P.'s biological parents have their visitation restored or have custody, guardianship, or overnight or extended visits with T.P.

¶ 16 The State argued that it was in T.P.'s best interest that his biological parents' parental rights be terminated so that he could be adopted by his foster parents. During arguments, respondent took no position as to T.P.'s best interest.

¶ 17 The trial court found the State had proven termination of respondent's parental rights was in T.P.'s best interest. The court indicated it had considered the statutory best-interest factors. The court noted Miller's testimony that T.P. appeared to be bonded to his foster parents and that his foster parents were willing to adopt him. The court stated all of T.P.'s needs were met in his foster placement, and there was no evidence that a relationship existed between the minor and respondent or whether it could be possible to consider placing him with respondent.

¶ 18 The trial court entered a written order finding respondent was unfit in that he failed to maintain a reasonable degree of interest, concern, or responsibility as to T.P.'s welfare and that termination of his parental rights was in T.P.'s best interest. This appeal followed.

¶ 19                                II. ANALYSIS

¶ 20 On appeal, appointed appellate counsel has moved to withdraw, stating that counsel has reviewed the record and has concluded respondent's appeal is without arguable merit. Counsel indicates he has considered arguing that the trial court's unfitness and best interest determinations were against the manifest weight of the evidence but determined that no meritorious argument can be made as to either of these issues. Counsel indicates that counsel attempted to communicate with respondent, and he has filed certificates of service indicating he mailed copies of the motion to withdraw and supporting brief to respondent. Respondent has not filed a response.

¶ 21 The procedure for appellate counsel to withdraw set forth in *Anders* applies to cases involving findings of parental unfitness and termination of parental rights. *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000). Under this procedure, counsel's motion to withdraw must "be accompanied by a brief referring to anything in the record that might arguably support the appeal." (Internal quotation marks omitted.) *Id.* Counsel must sketch the arguments in support of such issues and explain why counsel believes the arguments are frivolous. *Id.*

¶ 22                                    A. Unfitness

¶ 23 Counsel asserts there is no potentially meritorious argument to be made that the trial court erred by finding that respondent failed to maintain a reasonable degree of interest, concern, or responsibility for T.P.'s welfare. Counsel notes that while respondent attended every court appearance, he did not otherwise participate in the case either before or after his paternity was established, and he completed no services.

¶ 24 The involuntary termination of parental rights involves a two-step process. *In re C.W.*, 199 Ill. 2d 198, 210 (2002). The State must first prove by clear and convincing evidence that the parent is "unfit" pursuant to section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West

- 6 -

2022)). See 705 ILCS 405/2-29(2) (West 2022); *C.W.*, 199 Ill. 2d at 210. If the court finds the parent unfit, it then considers whether termination of parental rights is in the child's best interest. See 705 ILCS 405/2–29(2) (West 2022); *C.W.*, 199 Ill. 2d at 210.

¶ 25 Section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)) sets forth numerous grounds upon which a parent may be deemed unfit. Relevant to this appeal, section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2022)) provides that a person may be found to be unfit to have a child on the ground that such person "[f]ail[ed] to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." This section "includes all situations in which a parent's attempts at maintaining a reasonable degree of interest, concern, or responsibility are inadequate, regardless of whether that inadequacy seems to stem from unwillingness or an inability to comply." *In re M.I. v. J.B.*, 2016 IL 120232, ¶ 26.

¶ 26 In determining whether a parent is unfit on this ground, "the court must examine the parent's conduct concerning the child in the context of the circumstances in which that conduct occurred." (Internal quotation marks omitted.) *In re Adoption of H.B.*, 2012 IL App (4th) 120459, ¶ 42. "Noncompliance with an imposed service plan, a continued addiction to drugs, a repeated failure to obtain treatment for an addiction, and infrequent or irregular visitation with the child have all been held to be sufficient evidence warranting a finding of unfitness under subsection (b)." *In re Jaron Z.*, 348 Ill. App. 3d 239, 259 (2004).

¶ 27 We will not disturb the trial court's determination that parental unfitness has been established by clear and convincing evidence unless that determination is against the manifest weight of the evidence—*i.e.*, "where the opposite conclusion is clearly apparent." *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005).

¶ 28 Here, the trial court's determination respondent was unfit in that he failed to

maintain a reasonable degree of interest, concern, or responsibility for T.P.'s welfare was not against the manifest weight of the evidence. The evidence presented at the unfitness hearing showed that respondent's paternity had been established in March 2023. After his paternity was established, respondent failed to complete an integrated assessment, cooperate with the caseworker, or complete any of the required services. Fuller testified that she spoke with respondent at every court hearing and mailed him copies of the service plans at the address she had on file for him, but respondent was uncooperative and did not successfully complete any services. Respondent's visitation with T.P. was suspended throughout the case, and respondent failed to engage in the case sufficiently to have his visitation restored. Based on the evidence presented, we agree with appellate counsel that no issue of arguable merit could be raised that the trial court's unfitness was against the manifest weight of the evidence.

¶ 29                    B. Best-Interest Determination

¶ 30        Counsel also asserts there is no potentially meritorious argument to be made that the trial court's best interest determination was erroneous. Counsel notes there was no evidence presented as to any relationship between T.P. and respondent, and the State presented evidence that T.P. was being cared for by his foster parents and that they were willing to adopt him. Counsel notes that respondent presented no evidence at the best-interest hearing and waived argument on the issue.

¶ 31        "At the best-interest portion of a termination hearing, the State bears the burden of proving by a preponderance of the evidence that termination of parental rights is in the child's best interest." *In re J.B.*, 2019 IL App (4th) 190537, ¶ 31. At this stage, the focus shifts from the parent to the child. *In re D.T.*, 212 Ill. 2d 347, 364 (2004). The issue is whether, in light of the child's needs, parental rights should be terminated. *Id.* Section 1-3(4.05) of the Juvenile Court

Act (705 ILCS 405/1-3(4.05) (West 2022)) provides that the trial court must consider several enumerated factors when making a best interest determination. These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072 (2006).

See 705 ILCS 405/1-3(4.05) (West 2022).

¶ 32    We will reverse a trial court's best-interest determination only if it is against the manifest weight of the evidence. *J.B.*, 2019 IL App (4th) 190537, ¶ 33. This occurs "only if the facts clearly demonstrate that the trial court should have reached the opposite result." *Id.*

¶ 33    Here, we agree with counsel that there is no argument of arguable merit to be raised on appeal that the trial court's best-interest determination was against the manifest weight of the evidence. The court indicated it had considered the evidence presented and the applicable statutory factors. The evidence at the best interest hearing showed T.P. was bonded with his foster parents, and they were willing to adopt him. As the court noted, no evidence was presented as to any relationship existing between respondent and T.P. or as to whether it would be possible to ever place T.P. in respondent's custody. Respondent declined to present any evidence at the

best interest hearing and took no position as to T.P.'s best interest during arguments.

¶ 34                                    III. CONCLUSION

¶ 35          For the reasons stated, we allow counsel's motion to withdraw and affirm the trial

court's judgment.

¶ 36          Affirmed.